IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 3:15CR137–HEH |
| | ) | |
| NELSON WATTS BROADIE, JR., | ) | |
| | ) | |
| Petitioner. | ) | |

**MEMORANDUM OPINION**
**(Denying 28 U.S.C § 2255 Motion)**

Nelson Watts Broadie, Jr., a federal inmate proceeding *pro se*, filed this 28 U.S.C.

§ 2255 Motion (ECF No. 75).  Broadie demands relief upon the following grounds:[1]

Claim One       "Violation of the 5th and 14th Amendment which include the
                due process . . .
                [(a)] criminal complaint
                [(b)] unlawful investigation
                [(c)] Miranda rights."[2] (*Id.* at 4.)

Claim Two       "Violation of the 6th Amendment . . .
                [(a)] ineffective assistance of trial counsel
                [(b)] ineffective assistance of appellate counsel
                [(c)] witness credibility
                [(d)] bribery-witness bribe the official/or official bribe the
                    witness." (*Id.* at 5.)

Claim Three     "Violation of the 4th Amendment . . .
                [(a)] initiation warrant for G.P.S. device
                [(b)] arrest warrant
                [(c)] search warrant 3700 Delmont Str.
                [(d)] search of 301 N. Laburnum Ave." (*Id.* at 6.)

---

[1] The Court employs the pagination assigned by CM/ECF docketing system to the parties'
submissions.  The Court corrects the capitalization, punctuation, and spelling in the quotations
from Broadie's submissions.

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

The Government filed a response. (ECF No. 91.) The Court subsequently directed Broadie to show cause as to why Claims One (a)–(c), Two (c) and (d), and Three (a)–(d) should not be dismissed as procedurally defaulted, as those claims did not appear to be raised on direct appeal. (ECF No. 97.) Broadie filed a response, in which he conceded that those claims were not raised on direct appeal. (ECF No. 98, at 2.) Broadie claimed, however, that he advised his attorneys "about the claims," and described both his trial and appellate attorneys as "ineffective." (*Id.*) The Court liberally construes Broadie's contention to be that the perceived ineffective assistance he received from counsel constitutes cause for his procedural default. For the reasons stated herein, Claims One (a)–(c), Two (c) and (d), and Three (a)–(d) will be dismissed, as they were procedurally defaulted. Claims Two (a) and (b) will be dismissed because Broadie has failed to adequately demonstrate that he received ineffective assistance of counsel.

## I. Factual and Procedural History

Broadie was charged in a seven-count indictment for various firearms and narcotics trafficking crimes allegedly committed between July 15, 2015 and July 24, 2015. (ECF No. 11.) Among other things, it was alleged that on July 15, July 20, and July 21, 2015, Broadie sold crack cocaine to a confidential informant while under audio, video, and direct surveillance. (ECF No. 17, at 2.) On the latter two occasions, it was further alleged that Broadie was armed with a firearm, which he brandished or otherwise displayed to the confidential informant, "in order to intimidate that drug customer." (*Id.* at 3.)

2

The Government filed a Motion *In Limine*, Pursuant to Federal Rules of Evidence 402 and 404(b), seeking to introduce evidence that Broadie had used the same weapon that he allegedly displayed in furtherance of the indicted drug transactions on two previous dates to commit two separate drug-related offenses. (*Id.* at 1–2.) Specifically, the Government sought to offer evidence that on June 25, 2015, and then again on June 27, 2015, Broadie used the same firearm to rob two different people that he believed to be drug dealers of their contraband or currency. (*Id.*)  On the latter date, Broadie used the weapon to shoot and wound the robbery victim. (*Id.* at 2.)

Among the evidence the Government sought to introduce were statements of other participants in the robberies "confessing to the events and identifying [] Broadie as a participant." (*Id.* at 3).  Forensic evidence linking a shell casing found at the scene of the June 27, 2015, robbery to a firearm associated with Broadie that was seized was also proffered. (*Id.* at 3–4.)  Finally, the Government sought to introduce statements made by Broadie "after being fully advised of and waiving his *Miranda* rights." (*Id.* at 3.)  Among other things, Broadie admitted that:  (a) he was a felon; (b) he knew he could not possess a firearm; (c) he had been selling cocaine to "some people," in the last few weeks; (d) he participated in the June 27th robbery with the intent of stealing drugs; (e) he shot the victim of the June 27th robbery; (f) the gun used in the June 27th robbery was the same gun seized from his apartment; (g) the gun used in the June 27th robbery was the same gun displayed during the drug transactions that allegedly took place on June 20th and 21st; and (h) he carried that weapon with him when he was selling drugs to protect himself. (*Id.* at 3–4.)

3

Broadie, through his attorney, filed a response to the Government's Motion *In Limine*, opposing the introduction of said evidence. (ECF No. 18.) At a hearing on November 25, 2015, the Court ruled that the Government could introduce all of the above-mentioned evidence, except for any reference to the fact that the victim of the June 27th robbery had been wounded. (ECF Nos. 27, 28.) The Court determined that the evidence of the wounding was too prejudicial for the jury to consider. (*Id.*)

On December 2, 2015, a jury convicted Broadie of possession of a firearm/ammunition by felon (Count One), three counts of possession with intent to distribute/distribution cocaine base (Counts Three, Four, and Five), and two counts of possession of a firearm in furtherance of a drug trafficking crime (Counts Six and Seven). (ECF No. 39.) The jury acquitted him of an additional count of possession of ammunition by felon (Count Two). (*Id.*)

On January 28, 2016, a Presentence Investigation Report ("PSR") was filed with the Court. (ECF No. 42.) On February 18, 2016, based on factual challenges raised by Broadie's attorney, the probation officer made several revisions to the PSR, and attached an addendum flagging for the Court an objection raised by defense counsel concerning the calculation of Broadie's guidelines ("Revised PSR"). (ECF No. 43, at 24.)

The Revised PSR revealed, *inter alia*, that Broadie had multiple juvenile adjudications beginning at around the age of fifteen, as well as adult convictions for Attempted Robbery and Use of a Firearm in Commission of Felony from 2012 in the Circuit Court for Henrico County. (*Id.* at 12–16.) Broadie had a Total Offense Level of

4

22 and a Criminal History Category of IV, resulting in an advisory guideline range of 447 months to 462 months. (*Id.* at 22.)

Defense counsel objected to the calculation of Broadie's Offense Level of 22. (*Id.* at 24.) Defense counsel maintained that Broadie's Offense Level should have been 20, that the probation officer incorrectly applied U.S.S.G. § 2K2.1(a)(3)(A)(i) and (B), and that Broadie's prior conviction for Attempted Robbery should not have been categorized as a "violent" prior conviction. (*Id.*)

At sentencing, the Court adopted the Revised PSR without change. (ECF No. 58, at 1.) The Court sentenced Broadie to 447 months of incarceration, the low end of the advisory guidelines range. (ECF No. 57.) In so doing, the Court credited defense counsel with making "a compelling argument," for a downward departure from the advisory guidelines range. (ECF No. 67, at 12). The Court indicated that it was "initially inclined to go along with [defense counsel's] request [to] depart or vary downward in this case." (*Id.* at 29.)   However, the Court ultimately resolved that Broadie was a "very, very dangerous person," and that a sentence at the low-end of the guidelines was more appropriate. (*Id.*)

Chief among the concerns that led the Court to deny defense counsel's motion to "depart or vary downward in this case," was the fact that Broadie had "been involved in two home invasions involving drugs," in which he was armed. (*Id.*) In one of those instances, "a person was shot," and in the other "the firearm was discharged." (*Id.*) The Court was further dissuaded from departing from the guidelines because Broadie "had just been released from the Virginia penitentiary when [he] committed these offenses."

(*Id.* at 30.) The Court noted that Broadie "had a number of infractions while [he] was confined," on his state charges, and ultimately resolved that Broadie's "prior period of incarceration . . . obviously had no deterring effect," on his conduct. (*Id.* at 29.)

Broadie noted his appeal. (ECF No. 59). Broadie challenged the admission of evidence concerning the two robbery attempts and the firearm that was utilized under Federal Rule of Evidence 404(b), as well as the calculation of his guidelines and the decision to categorize his state conviction for attempted robbery as a crime of violence. (ECF No. 72, at 2.) Appellate counsel successfully petitioned the United States Court of Appeals for the Fourth Circuit to hold the case in abeyance pending the resolution of another potentially pertinent case that was being decided on appeal. (ECF No. 71.) However, after due consideration, the Fourth Circuit ultimately determined Broadie's challenges were without merit and affirmed his convictions. (ECF Nos. 72, 73, 74.)

## II. Analysis

The procedural default rule bars Claims One (a)–(c), Two (c) and (d), and Three (a)–(d) from review here, absent a showing of cause and prejudice or actual innocence, because Broadie could have raised, but did not raise, these claims on direct appeal. *See Bousley v. United States*, 523 U.S. 614, 622–23 (1998). Broadie seems to contend that the perceived ineffective assistance of counsel constitutes cause to excuse his default of these claims. (ECF No. 98, at 2.) That contention lacks merit for the reasons discussed below. *Cf. United States v. Frady*, 456 U.S. 152, 167–68 (1982) (noting that when applying the dual standard of cause and prejudice courts need not

6

examine the issue of cause, if prejudice is clearly lacking).  Accordingly, Claims One
(a)–(c), Two (c) and (d), and Three (a)–(d) will be dismissed.

### III.  Ineffective Assistance of Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must
show, first, that counsel's representation was deficient, and second, that the deficient
performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687
(1984).  To satisfy the deficient performance prong of *Strickland*, the convicted defendant
must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within
the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577,
588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689).  The prejudice component
requires a convicted defendant to "show that there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would have been different.
A reasonable probability is a probability sufficient to undermine confidence in the
outcome." *Strickland*, 466 U.S. at 694.  In analyzing ineffective assistance of counsel
claims, it is not necessary to determine whether counsel performed deficiently if the
claim is readily dismissed for lack of prejudice. *Id.* at 697.

### A.  Trial Counsel

In Claim Two (a), Broadie posits that he was deprived of his Sixth Amendment
rights by counsel's ineffective performance at trial.[3] (ECF No. 75, at 35–36.)

---

[3] In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of
Counsel for his defence.  U.S. Const. amend. VI.

Specifically, Broadie claims that trial counsel was ineffective because she "[f]ailed to

object to . . . the photo of a white Ford Fusion that wasn't part of the evidence list."

(*Id.* at 36.) Broadie takes further issue with the photograph's admission because the "car

wasn't in the defendant name," and because Broadie "wasn't driving the car when

arrested."[4] (*Id.*)

     As an initial matter, Broadie's assignment of error to trial counsel appears to be

based, at least in part, on a faulty factual premise. He maintains that the "photo of a

white Ford Fusion," which he contends counsel should have objected to, "wasn't part of

the evidence list." (*Id.* at 36.) While he does not specify which particular photograph he

complains about, either by providing a trial exhibit number, or some other form of

descriptive detail, it is worth noting that "Photographs from the search of the 2016 Ford

Fusion," were listed on the United States' Exhibit List as Exhibit Number 14.[5]

(ECF No. 32, at 2.) Thus, to the extent Broadie believes that trial counsel should have

objected to the photograph's admission on the basis that it constituted unfair surprise, or

that it was not duly noticed, he is wrong.

     More to the heart of his argument, Broadie seems to claim that trial counsel should

have objected to the photograph of the car being admitted because the "car wasn't in the

---

[4] Broadie argues in conclusory fashion that trial counsel was also ineffective for failing to raise procedurally defaulted Claim One (b) ("unlawful investigation"), Claim One (c) ("Miranda Rights"), and Claims Three (a)–(d) ("unlawful warrants"). (ECF No. 75, at 35–36). The merits of this position will be discussed in section III.C. below.

[5] The Court will assume, *arguendo*, that the photograph Broadie complains of is Exhibit 14, despite the fact Broadie has failed to specifically identify it as such. It is worth noting that this picture was received into evidence during the testimony of a cooperating codefendant who testified Broadie drove a white Ford. (ECF No. 65, at 82.)

defendant name," and because Broadie "wasn't driving the car when arrested."
(ECF No. 75, at 36.) Broadie fails to articulate how trial counsel could have utilized either of these factors to fashion a sustainable objection to the admissibility of the photograph in question. Broadie does not cite any statute, case, or rule of evidence to support either position, nor is the Court aware of any authority that would make these relevant considerations to the issue of admissibility in this instance.

In this case, the allegations were, in relevant part, that Broadie conducted drug transactions on July 15, 20, and 21, 2015. (ECF No. 11, at 3). In each instance, a confidential informant made a monitored phone call to Broadie to set up a drug transaction, and in each instance, the same white Ford was used to deliver the narcotics at the appointed place. (ECF No. 65, at 168–73). In each instance, officers conducting surveillance were able to identify Broadie as the driver of the white Ford. (*Id.* at 239–47). Broadie was not arrested until several days later, on July 24, at his girlfriend's apartment. (*Id.* at 247–48.) The Ford, which Broadie "had been operating," was parked outside. (*Id.* at 249.) After receiving consent from Broadie, officers searched the vehicle, and certain pieces of evidence were recovered. (*Id.* at 249–50). This white Ford was a rental car. (*Id.* at 210–11, 266.) It is in this context that the Court examines Broadie's claims.

Simply put, it does not matter who may have owned the vehicle, or whose name was on the vehicle documents. The vehicle was a rental, so one would not necessarily expect the vehicle to be "in the defendant name." (ECF No. 75, at 36.) Beyond that, it is plain to the Court that the driver of a vehicle does not have to own the vehicle. In this

case there were multiple witnesses, including confederates of Broadie, that testified he

was in possession of the vehicle depicted in Exhibit 14 during critical moments of this

multiday narcotics operation. Moreover, Broadie gave officers consent to search the

vehicle, which demonstrates a level of dominion and control over the vehicle, regardless

of whether he held actual title. Similarly, it is of no moment that Broadie was not

"driving the car when arrested." (*Id.*) In point of fact, no one seems to have been driving

the vehicle at the moment Broadie was arrested; rather, it was parked outside the

residence where he was found. A more relevant fact to consider is the identity of the

person who drove the vehicle to the three monitored drug transactions (i.e., Broadie). In

any event, neither claim would have provided trial counsel with a sufficient basis to

object to the admissibility of Exhibit 14. As such, Broadie has failed to show that trial

counsel was deficient in this regard, much less that he was prejudiced in any way.

Accordingly, Claim Two (a) will be dismissed.

### B.   Appellate Counsel

In Claim Two (b), Broadie faults appellate counsel for failing to "file ineffective

assistance of trial counsel," and for failing "to review the jury instruction."[6]

(ECF No. 75, at 36.) With regard to Broadie's first contention, "it is well settled that 'a

claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the

---

[6] Broadie also claims in a conclusory fashion that appellate counsel was ineffective for failing
"to argue the Due Process." (ECF No. 75, at 36.) While Broadie does not specify what he
means by this or give any indication as to how appellate counsel was ineffective in this regard,
construed liberally, this appears to be a reference to procedurally defaulted Claims One (a)–(c),
which will be discussed further in Section III.C. below.

district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" *United States v. King*, 119 F.3d 290, 295 (4th Cir. 1997) (quoting *United States v. Williams*, 977 F.2d 866, 871 (4th Cir. 1992)). As discussed throughout this opinion, the record does not *conclusively* show that trial counsel was ineffective. As such, it stands to reason that appellate counsel may not be faulted for failing to raise that issue on direct appeal. Accordingly, Claim Two (b) fails in this regard. With regard to the argument that appellate counsel was deficient for failing to "review the jury instruction," (ECF No. 75, at 36), Broadie again fails to articulate an issue which rises to the level of a constitutional deprivation. Broadie does not specify which "jury instruction," he takes issue with, or how any of the jury instructions were defective. (*Id.*) More importantly, he fails to state how appellate counsel should have acted differently *vis a vis* the jury instructions. Because Broadie fails to demonstrate deficiency or prejudice, Claim Two (b) will be dismissed.

### C.   Ineffective Assistance as Cause for the Default of Remaining Claims

In Claim One, Broadie complains generally, though not very coherently, that his Due Process rights were violated. In Claim One (a), he maintains that a criminal complaint could not be lodged against him because "[c]omplaints must come from a citizen eye witness." (ECF No. 75, at 17). He maintains that the only "citizen" who could have filed a complaint in this case was the confidential informant. (*Id.*) However, he argues, the confidential informant, in this particular instance, would have been precluded from lodging such a complaint against him, because prior to the initiation of this investigation, he had been an "inmate at the Department of Justice," which,

11

according to Broadie, caused his "citizenship" to be "waived" as the confidential

informant, had in effect become "property of the Department of Justice," and thus, not

eligible to file a complaint. (*Id.*) Setting aside for the moment, the fact that if Broadie

applied this illogical approach to his own case, he may well be barred from bringing the

present action, his argument ignores the very obvious facts that people do not become

"property," of the Government upon criminal conviction, and most criminal proceedings

are not in fact initiated by a "citizen eye witness," but rather by an officer or an agent of

the government, as was the case in this instance. In any event, counsel reasonably

refrained from raising this frivolous claim at trial and on appeal. Accordingly, as Broadie

fails to demonstrate deficiency or prejudice, Claim One (a) will be dismissed.

Claim One (b) is similarly incomprehensible. As best the Court can discern,

Broadie seems to argue that the United States, or as he calls them, the "respondent team,"

could not "initiate any investigation without the District Court's approval." (*Id.* at 19.)

Liberally construed, Broadie seems to be alleging that the Government needed to obtain

prior approval from the Court prior to launching an investigation into his criminal

activities. Again, Broadie displays a clear misunderstanding of the law, and the

Constitutional notion of separation of powers. Again, the Court finds no fault with

counsel's decision not to raise this argument at trial or on appeal. Because Broadie fails

to demonstrate deficiency or prejudice, Claim One (b) will be dismissed.

In Claim One (c), Broadie argues that his *Miranda* rights were violated. He seems

to divide his argument into two parts. First, he complains that at the time of his arrest,

but before he was transported to the police station to be formally interviewed, he made

statements about a "box of bullets in the book bag in the trunk" of his car without being fully/properly advised of his rights. (*Id.* at 23–24.) These statements relate directly to Count 2 (Possession of Ammunition by Felon), for which Broadie was acquitted. Accordingly, the Court does not need to consider this line of argument further in the context of this post-conviction challenge.

The second argument Broadie makes concerning *Miranda* relates to his formal interview with Detectives Johnakin and Pulley at the "Henrico County Police Facility." (*Id.* at 24.) The testimony at trial was that "prior to [the] interview," Detective Johnakin advised Broadie of his *Miranda* rights by reading them "off of a form," and that Broadie "acknowledged each of his rights, and then signed at the bottom of the form acknowledging that he understood those rights." (ECF No. 65, at 252.) In addition to the written acknowledgement, Broadie also indicated "verbally" that he understood his rights. (*Id.*) In his § 2255 Motion, Broadie admits that Detective Johnakin told him: "[y]ou have the right to remain silent, . . . anything you say can and will be used against you, you have the right to an attorney present, if you can't afford one, we will appoint one to you." (ECF No. 75, at 24.) Broadie further admits that prior to trial he had an opportunity to, and in fact did review a recording of the interview with his attorney. (*Id.* at 25) ("when seeing it with my lawyer on video . . . Detective Johnakin had made those statements.") In this light, the Court finds no fault with counsel's decision not to raise *Miranda* issues either at trial or on appeal. Because Broadie fails to demonstrate deficiency or prejudice, Claim One (c) will be dismissed.

13

In Claim Two (c), which Broadie describes as "witness credibility," and Claim Two (d), which he describes under the heading, "bribery," Broadie attacks the relationship between the confidential informant who purchased narcotics from him and Detective Anderson, and calls into question the credibility of their testimony. These claims are intertwined and can be adequately addressed together. In essence, Broadie maintains that the confidential informant had a motive to fabricate evidence against him, and provided perjured testimony at trial, which was supported, either knowingly, or otherwise, by Detective Anderson. These issues, including what consideration may have been offered or expected, were flushed out by trial counsel, who cross-examined both the confidential informant, and Detective Anderson, though apparently not as forcefully as Broadie would have preferred. (ECF No. 65, at 139–53, 175–96).

Among other things, it was established that the confidential informant had worked with Detective Anderson for approximately twenty years, and that he had been both a paid informant, and a cooperating defendant, while he was *working off charges*." (*Id.* at 176–77.) It was also established that in this instance, the confidential informant was under a felony charge, for which he was hoping to receive consideration. (*Id.* at 179.) Indeed, Broadie's § 2255 Motion is replete with citations to trial transcripts in which he highlights testimony about the relationship between the confidential informant and Detective Anderson, which the jurors could have viewed as unfavorable for the Government, if they so chose. (ECF No. 75, at 26–30.) In this light, it is unclear what more trial counsel could have ethically done *vis a vis* the confidential informant or

14

Detective Anderson to develop competent admissible evidence or testimony on behalf of Broadie.

In one of the more incoherent portions of his § 2255 Motion, Broadie seems to allege that the confidential source "bribed," Detective Anderson by assisting him to develop a case against Broadie, because, according to Broadie, Detective Anderson would receive money from some indeterminate source for bringing the case. (*Id.* at 30.) Broadie seems to think that Detective Anderson would receive "around 75k," as the "team leader," for charging Broadie, though it is unclear from his papers where that payment would come from, or why anyone would make such a payment in the first place. (*Id.*) Broadie seems to further believe that Detective Anderson would personally benefit from charging him because "[a]fter the court or case fines, the respondent team keep whatever is left over." (*Id.*) Broadie offers no citations to support his beliefs. (*Id.*)

To the extent Broadie now seeks to fault counsel for not raising this issue, which appears to be completely untethered to reality, in this particular manner at trial, the Court can find no fault with counsel's decision to refrain from posing her questions to the witnesses in these stark terms. It is of no moment that trial counsel may not have been as aggressive in her cross-examination, or as blatant in her accusations as Broadie may have liked; her performance falls "within the wide range of reasonable professional assistance," allowable under the law. *See, e.g., Burch*, 273 F.3d at 588. Indeed, had counsel aggressively pressed these points, as Broadie now seems to say that she should have, counsel may have subjected herself to disciplinary action. *See* Virginia Rule of Professional Conduct 3.1 ("[a] lawyer shall not bring or defend a proceeding, or assert or

controvert an issue therein, unless there is a basis for doing so that is not frivolous"); *see also* Virginia Rule of Professional Conduct 3.4(f) (at trial a lawyer "shall not . . . allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence"). Simply put, under these circumstances, it was not unreasonable for trial counsel to refrain from overtly accusing Detective Anderson in open court of accepting a "bribe" from the confidential informant.

Moreover, given that witness credibility determinations are inherently a question for the jury, and it was obvious from their verdicts that the jury did not discount in total the testimony of the confidential informant, or Detective Anderson, it is understandable why appellate counsel would not include these claims in the direct appeal. *See, e.g., United States v. Saunders*, 886 F.2d 56, 60 (4th Cir. 1989) (observing that appellate courts are bound by the "credibility choices of the jury" and do not independently weigh the evidence) (citations omitted). In any event, it was reasonable for appellate counsel to forgo the inclusion of these claims before the Fourth Circuit. Because Broadie has failed to establish a deficiency on the part of either his trial attorney or his appellate attorney in this regard, much less any resulting prejudice, Claims Two (c) and (d) will be dismissed.

Broadie also challenges the legality of four warrants. (ECF No. 75, at 6.) In Claim Three (a), he challenges a "warrant for [a] G. P. S. devi[c]e," in Claim Three (b), he challenges the arrest warrant, in Claim Three (c), he challenges the warrant for 3700 Delmont Street, in Claim Three (d), he challenges the warrant for 301 N. Laburnum Avenue. (*Id.*) However, unlike his other claims discussed above, Broadie neglected to include specific sections in his supporting memorandum dedicated to discussing these

issues. Rather, strewn throughout that almost forty-page document, he includes various discussions of warrants with varying degrees of specificity. Since Broadie has decided not to delineate these topics into discrete discussions, the Court will first address Claims Three (a), (c), and (d), which deal with search warrants, collectively, followed by Claim Three (b), which deals with the warrant for his arrest.

The Fourth Amendment protects against unreasonable "searches and seizures," and requires a showing of "probable cause," before any warrant shall be issued.[7] However, "searches executed 'pursuant to a warrant will rarely require any deep inquiry into reasonableness,'" because "[t]ypically, 'a warrant issued by a [judicial officer] . . . suffices to establish that a law enforcement officer has acted in good faith in conducting the search.'" *United States v. Andrews*, 577 F.3d 231, 236 (4th Cir. 2009) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). Moreover, warrant affidavits are presumed to be valid, and "may properly be based on hearsay, on fleeting observations, and on tips received from unnamed informants whose identity often will be properly protected from revelation." *Franks v. Delaware*, 438 U.S. 154, 167 (1978) (citation omitted). Even "[a]n erroneous description in [a] warrant" will not "necessarily invalidate [that] warrant" or a "subsequent search." *United States v. Owens*, 848 F.2d 462, 463 (4th Cir. 1988) (citations omitted). The Supreme Court has instructed lower courts to give "latitude for honest mistakes that are made by officers" in execution of

---

[7] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

search warrants, which the Court described as a "dangerous and difficult process."

*Maryland v. Garrison*, 480 U.S. 79, 87 (1987).  Indeed, there are really only four

instances when evidence gathered pursuant to a search warrant may be excluded:

> (1) when the affiant based his application on knowing or reckless falsity; (2)
> when the judicial officer wholly abandoned his role as a neutral and detached
> decision maker and served merely as a "rubber stamp" for the police; (3)
> when the affidavit supporting the warrant was so lacking in indicia of
> probable cause as to render official belief in its existence entirely
> unreasonable; and (4) when the warrant was so facially deficient that the
> executing officers could not reasonably have presumed that
> the warrant was valid.

*United States v. Wellman*, 663 F.3d 224, 228–29 (4th Cir. 2011) (citation omitted).

However, due to the "substantial social costs" associated with the "[s]uppression of

evidence," the Supreme Court has cautioned that application of the exclusionary rule is a

"last resort, not [a] first impulse." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006).

Clearly, any party advocating the suppression of evidence faces a "high obstacle." *Id.*

(concluding evidence obtained pursuant to search warrant admissible despite violation of

"knock-and-announce" rule).

Broadie does not articulate that any of the four circumstances discussed in

*Wellman* apply for Claims Three (a), (c), and (d).  Rather, he takes issue with those

warrants because he believes that the law requires the Government to show that he, as the

target of the investigation, had "some type of ownership [in] the property," before a

warrant could be issued.  (ECF No. 75, at 20.)  He maintains that because he did not own

or lease the residences and vehicle that were the subject of these warrants, the issuance of

the warrants was somehow inappropriate.  Broadie does not cite any statute, case, or

authority to support such a bright-line requirement of "ownership," and the Court is not

aware of any authority that would support the position. Quite to the contrary, the fact that

Broadie did not own or have a possessory interest in the places/things that were searched

may have actually worked to undercut any challenge to these warrants that conceivably

could have been brought. *See generally Rakas v. Illinois*, 439 U.S. 128 (1978).

While the deficiencies inherent to Broadie's argument apply across the board to

Claims Three (a), (c), and (d), they are particularly pronounced with regard to Claim

Three (a). There, Broadie takes issue with the use of a GPS tracking device, not based on

any articulable deficiency in the warrant, the application for the warrant, or the execution

of the warrant, but rather based upon the fact that it was placed on a rental vehicle that

"wasn't rented to the defendant," that "many people," drove.   (ECF No. 75, at 20.)

After thoroughly renouncing any interest in the vehicle, (*see id.* ("the defendant didn't

have any ownership for the rental Ford Fusion") ("the defendant didn't have a license to

rent [a car]")), Broadie seems to say that when officers put the GPS tracker on the vehicle

in question, they were in fact "tampering with another person's car." (*Id.*) As discussed

above, this is not a valid means of attacking the warrant in this instance, and only serves

to undercut Broadie's position by highlighting the fact that he may have lacked standing

to the challenge the warrant in the first place. *See Rakas*, 439 U.S. at 133–34 (citations

omitted) ("Fourth Amendment rights are personal rights which . . . may not be

vicariously asserted").

Broadie's position concerning Claim Three (d), which relates to the Laburnum

Avenue search, is more tenuous still. Broadie again marches out the same argument

concerning his lack ownership that he advanced for Claims Three (a) and (c). However, here he also concedes that there was "in fact [] consent [to] search" given by Mya Simmons, the apparent tenant of that residence. (ECF No. 75, at 21.) Given this fact, a warrant may not have even been necessary to search the Laburnum Avenue residence. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

In any event, Broadie's arguments concerning the warrants for the GPS device, the Delmont Street residence, and the Laburnum Avenue residence seem to be rooted in a deep misunderstanding of the law. As discussed above, to successfully challenge the warrants referenced in Claims Three (a), (c), and (d), Broadie would have needed to show, among other things, that an affiant knowingly or recklessly included a falsity in the warrant application, that an issuing judicial official abandoned his role as a neutral and detached decision maker, that an affidavit supporting one of the warrants was utterly lacking in probable cause, or that one of the warrants was so facially deficient that the executing officer could not have believed that it was valid. *See, e.g., Wellman,* 663 F.3d 228-29.

Broadie has failed to articulate that any of these four legitimate grounds for challenging a search warrant apply in this case, much less provide the Court with a coherent argument as to why any of these warrants should be invalidated. As the Supreme Court said in *Hudson,* 547 U.S. at 591, the party advocating the suppression of evidence faces a "high obstacle." Even when the Court construes his arguments in the most liberal light possible, Broadie has still failed to come close to making the requisite

showing to allow Claims Three (a), (c), and (d) past the hurdle set forth in *Hudson*.[8]

Because Broadie has failed to show that either his trial attorney or his appellate attorney

were deficient for refraining from raising these claims prior to this juncture, much less

that he has suffered any resulting prejudice, Claims Three (a), (c), and (d) will be

dismissed.

Finally, with regard to Claim Three (b), which challenges the legality of the arrest

warrant, Broadie seems to offer no specific argument against the issuance of the warrant.

Rather, Broadie seems to implicitly concede that this claim was simply tagged on to his

---

[8] Broadie has given the Court no indication that the warrants complained of were lacking in terms of probable cause, that there were any material misrepresentations made in the process of applying for the warrants, that the judicial official who issued the warrants was biased, or acted as a rubber stamp for the Government, that there were any facial deficiencies on any of the warrants, much less glaring ones, or that there was any undue delays or other anomalies with regard to the execution of the warrants. Broadie has not even provided the Court with copies of the warrants that he complains about to review. In each instance, the warrants, at least as they have been described to the Court by the parties, seem to be rationally related to the Government's investigation into Broadie and his criminal activities, and, at least as described, appear to be reasonably limited in scope. In a multiday narcotics operation where the target was known to use frequently a particular vehicle to deliver narcotics, it would seem reasonable for the Government to obtain a warrant, provided probable cause supported it, to attach a GPS device to said vehicle so that they could monitor the target's comings and goings, and ensure the safety of their agents during the operation. Likewise, to the extent their investigation established that the target frequented particular places either before or after he consummated a narcotics transaction, it would seem equally reasonable for the Government to seek warrants, provided probable cause supported them, to search said locations. In any event, challenging a warrant is a difficult endeavor under any circumstances. Here, it would no doubt have been an uphill battle. Given Broadie's inability to point to any legitimate concerns regarding these warrants, the Court cannot fault either trial counsel, or appellate counsel, for refraining from raising these issues at trial or on appeal. Put another way, counsel easily could have determined that their time would have been better spent focusing on other aspects of trial/appeal preparation that had a higher likelihood of yielding a successful resolution and still fallen well "within the wide range of reasonable professional assistance" allowable under the law. *See, e.g., Burch*, 273 F.3d at 588. Because Broadie has failed to overcome the "strong presumption" that the "strategy and tactics" his attorneys employed fall "within the wide range" of acceptable legal assistance, he has failed to show any deficiency. *Id.* Because he has failed to show a deficiency, Broadie has likewise failed to show cause why his procedural default of these issues should be excused.

motion as an afterthought when he says that "whoever presented the issue to the courts did a pretty good job," and that's "all [I] can say about that." (ECF No. 75, at 20.) In that light, it would have been frivolous for counsel to raise this issue either at trial or on appeal. Accordingly, the Court can find no fault with counsel's performance in this regard. Because Broadie has failed to show a deficiency or prejudice, Claim Three (b) will be dismissed.

In sum, counsel reasonably refrained from raising the above claims at trial and/or on appeal. Broadie has failed to demonstrate deficiency or prejudice, or any basis for excusing his default of Claims One (a)–(c), Two (c) and (d), and Three (a)–(d).

## IV. Conclusion

The § 2255 Motion (ECF No. 75) will be denied. Broadie's claims and the action will be dismissed. Broadie's outstanding motions (ECF Nos. 79, 85, 87, 94, 95) will be denied. A certificate of appealability will be denied.

An appropriate Order shall accompany this Memorandum Opinion.

/s/

Henry E. Hudson
United States District Judge

Date: July 1, 2020
Richmond, Virginia

22